IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TIFFANY BRISTOW O/B/O
TEENA DEJESUS[1]                                                                       PLAINTIFF

V.                              No. 4:21-CV-00358-DPM-PSH

KILOLO KIJAKAZI,
ACTING COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to Chief United States District Judge D.P. Marshall Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.     Introduction:

Teena Dejesus applied for disability benefits on June 22, 2018. (Tr. at 226). Her claims were denied both initially and upon reconsideration. *Id*. After conducting

---

[1] On June 1, 2022, a death certificate was filed with the Court evidencing the death of Teena Dejesus. *Doc. 18*. Thereafter, the Court substituted Ms. Dejesus's daughter, Tiffany Bristow, as the plaintiff in this case. *Doc. 19*. However, for the sake of clarity, the Court will refer to Ms. Dejesus as the plaintiff throughout this opinion.

1

a hearing, an Administrative Law Judge ("ALJ") denied her application on March 27, 2020. (Tr. at 238). Ms. Dejesus asked the Appeals Council to review the ALJ's decision, and the Appeals Council granted her request, vacating the decision. (Tr. at 246). On December 24, 2020, after conducting a new hearing, the ALJ issued a new decision denying benefits. (Tr. at 29). This time, the Appeals Council declined Ms. Dejesus's request for review. (Tr. at 1). Thus, the ALJ's decision stands as the final decision of the Commissioner.

Ms. Dejesus now seeks judicial review of the Commissioner's decision. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Dejesus had not engaged in substantial gainful activity since the alleged onset date of June 7, 2018. (Tr. at 18). At Step Two of the sequential five-step analysis,[2] the ALJ found that Ms. Dejesus had the following severe impairments: mood disorder, personality disorder, anxiety disorder, trauma disorder, fibromyalgia, emphysema, and obesity. (Tr. at 19).

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

After finding that Ms. Dejesus's impairments did not meet or equal a listed impairment (Tr. at 20), the ALJ determined that Ms. Dejesus had the residual functional capacity ("RFC") to perform work at the medium exertional level, with additional limitations: (1) she needed to avoid concentrated exposure to fumes, odors, and gases; (2) she was limited to simple, routine, and repetitive job tasks where the reasoning level required did not exceed level two; (3) she could not perform jobs where interaction with the general public is required; and (4) she could not tolerate more than occasional changes to the workplace setting. (Tr. at 21-22).

Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Ms. Dejesus was unable to perform her past relevant work as a telemarketer (Tr. at 27), but that Ms. Dejesus's RFC would allow her to perform other jobs in the national economy such as lithographic general worker and sales route driver helper. (Tr. at 28). The ALJ concluded, therefore, that Ms. Dejesus was not disabled. *Id*.

### III. Discussion:

**A. Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts her findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Ms. Dejesus's Arguments on Appeal

Ms. Dejesus contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that, absent a finding of medical improvement,

4

the doctrine of res judicata required the ALJ to adopt a "light" RFC finding based on a prior agency decision in 2016. She maintains that the ALJ erred in evaluating her claims by failing to apply the correct standard of proof and by improperly relying on his own interpretation of the medical records in assessing her RFC. She also disputes the ALJ's findings with respect to her mental health impairments. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Dejesus first argues that a previous ALJ decision precludes the current ALJ's finding that she was capable of performing a range of medium work. That decision, which was issued on October 12, 2016, concerned Ms. Dejesus's condition between December 3, 2015, her then-alleged onset date, through the date of decision. (Tr. at 155). The prior ALJ found that, during that time period, Ms. Dejesus was capable of performing a limited range of light work. (Tr. at 151). Because her past job duties as a telemarketer and account executive did not exceed this light RFC, the prior ALJ found that she was capable of performing her past relevant work, and thus found she was not disabled. (Tr. at 155). According to Ms. Dejesus, the current ALJ was required to either adopt this light RFC finding or demonstrate that her condition had improved since the date of the prior decision.

"Collateral estoppel and res judicata can apply in certain circumstances of social security determinations, when the issue involves the same evidence, and the

same period of disability." *Aguiniga v. Colvin*, 833 F.3d 896, 900 (8th Cir. 2016). But where, as here, the subsequent application for benefits involves a different time period and a different record altogether, these principles do not apply. *Id*. (citing *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996); *Hardy v. Chater*, 64 F.3d 405, 407 (8th Cir. 1995)). *Accord Earley v. Comm'r*, 893 F.3d 929, 933 (6th Cir. 2018) ("Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998))).

Ms. Dejesus's reliance on out-of-Circuit precedent is unavailing. She cites *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997), and *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987), for the proposition that a previous ALJ's findings bind a subsequent ALJ unless the ALJ can point to evidence of improvement in a claimant's condition. Not only are these cases non-binding on the Court, but they also fail to tell the whole story.

In *Drummond*, the ALJ divided Drummond's claim into two contiguous time periods. *Drummond*, 126 F.3d at 839. The ALJ relied on res judicata to deny the first period based on a prior ALJ decision that found Drummond was limited to sedentary work. *Id*. For the second period, the ALJ found Drummond could perform medium work and was not disabled. *Id*. On appeal, the Sixth Circuit noted that, had the ALJ limited her to sedentary work during the second period, Drummond would be

entitled to benefits based on a change in her age category. *Id*. The court found in favor of Drummond, holding that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842.

But the Sixth Circuit later clarified its "overstatement" in *Drummond*, explaining that issue preclusion "rarely would apply" when a claimant's subsequent application covers a new, unadjudicated time period. *Earley*, 893 F.3d at 933. That is so because "[a]ny earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

In *Lively*, the Fourth Circuit confronted facts similar to those in *Drummond* and likewise held that the Commissioner failed to meet its burden to demonstrate improvement in the claimant's condition. *Lively*, 820 F.3d at 1392. Later, however, the Fourth Circuit clarified that *Lively* was a "rare case" that turned, in large part, on the brief two-week period between the first preclusive decision and the claimant's second application for benefits. *See Albright v. Comm'r*, 174 F.3d 473, 477 (4th Cir. 1999). "[C]ommon sense and logic dictated that Lively's physical condition was unlikely to have improved significantly within two weeks," the court reasoned. *Id*. But the court explained this logic did not apply to longer gaps between applications:

"Although we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the timeframe expands. Where, as here, the relevant period exceeds three years, our swagger becomes barely discernible." *Id*.

As the Sixth Circuit recognized in *Earley*, "*Albright* is to *Lively* what this case is to *Drummond*." *Earley*, 893 F.3d at 934. That is, both Circuits have clarified that these cases are less about preclusion, and are instead "best understood as a practical illustration of the substantial evidence rule in which the prior factual finding was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." *Id*. (internal quotations omitted).

In this case, nearly two years separate the prior ALJ's decision from the onset date alleged in the claim at issue. Moreover, after the prior decision was issued, Ms. Dejesus continued working until June 6, 2018, the day before the alleged onset date in the instant application. (Tr. at 86, 246). Although Ms. Dejesus points to two decisions from this district that have applied the collateral estoppel doctrine and remanded on those grounds, they are distinguishable from the present case because neither involved claims separated by a years-long gap in time. *See Messmer v. Comm'r*, No. 4:20-cv-01330, 2021 WL 2684299, at *1 n.1 (E.D. Ark. June 30, 2021) (second time period began day after prior decision issued); *Smith v. Berryhill*, No. 3:16-cv-00156, ECF No. 13 at 3 (prior decision issued "just over a month" before

second time period began). Here, the previous ALJ's finding that Ms. Dejesus was limited to light work from December 2015 to October 2016 bears limited relevance to her condition on and after June 7, 2018. The second ALJ was not bound to apply the prior finding, nor was he required to demonstrate improvement in Ms. Dejesus's condition since the date of the first decision.[3]

Ms. Dejesus also argues that the ALJ failed to develop the record because a substantial amount of medical records was received after state agency physicians had already reviewed the record and issued their findings. She accuses the ALJ of impermissibly "playing doctor" because he assessed her RFC without the support of a medical opinion, and she argues that the ALJ had a duty to seek an opinion from her treating physician.

This argument is without merit. "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016)

---

[3] Ms. Dejesus also argues that the ALJ did not apply the correct standard of proof in his decision, but she has failed to present any evidence, or even a case-specific argument, to support this assertion. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting a plaintiff's assertions "out of hand" for failure to provide analysis of the relevant law or facts to support his argument). Ms. Dejesus admits that an ALJ applies a "preponderance of the evidence" standard when making a disability decision. *See* 20 C.F.R. § 404.953(a). In the absence of evidence to the contrary, the Court can assume that the ALJ acted in conformity with this regulation. *See Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (quotation omitted).

(citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). But the ALJ is not required to support his RFC assessment with a specific medical opinion, *Hensley*, 829 F.3d at 932, and the ALJ does not have to seek further evidence from a claimant's treating physician "unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Ms. Dejesus has not identified any specific undeveloped issues in this case, and she has not alleged unfairness or prejudice due to the ALJ's alleged failure to develop the record. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (explaining that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Finally, Ms. Dejesus also argues that her mental impairments were severe and pervasive enough to preclude her from maintaining employment on a regular basis during the relevant time period.[4] Ms. Dejesus bears the burden to prove her RFC, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001), and she has failed to demonstrate on appeal that she is entitled to limitations other than those the ALJ already included in the RFC assessment, which restricted her to simple jobs with

---

[4] Ms. Dejesus has not challenged the ALJ's decision to discount the credibility of her subjective complaints regarding her mental health impairments. (Tr. at 26).

10

only occasional workplace changes and no interaction with the general public. (Tr. at 22). Ms. Dejesus quarrels with the ALJ's interpretation of her medical reports, but it is clear from the ALJ's decision that he considered "all of the relevant medical and other evidence" in the case record in determining her RFC, 20 C.F.R. § 404.1545(a)(3), and the Court is not permitted to re-weigh the evidence on appeal. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017).

Medical evidence supports the mental RFC finding. State agency psychological consultants reviewed the evidence of record and concluded that Ms. Dejesus was capable of performing semiskilled work with routine interpersonal contact. (Tr. at 170, 183). The ALJ found that the evidence presented at the hearing level justified an even more restrictive RFC. (Tr. at 27). The ALJ noted her history of suicidal ideations and some hallucinations, but he found that her condition improved with treatment, including consistent therapy and medication management. (Tr. at 26). This conclusion is borne out by the record. In May 2018, she reported that her symptoms were adequately controlled on medication. (Tr. at 922). Her depression and anxiety symptoms worsened between April and June 2019, and she sought inpatient treatment in May 2019 for suicidal ideation. (Tr. at 1283, 1442, 1527). After an 11-day course of treatment, she reported improved mood and discussed skills she had learned for coping with her mental health. (Tr. at 1522, 1527). The ALJ noted she had a good response to medication adjustments without

significant adverse side effects. (Tr. at 1528-1530, 1539-1541). Mental status exams showed appropriate appearance, appropriate dress, intact memory, and unremarkable thought content and perception. (Tr. at 1527, 1538).

One year later, Ms. Dejesus reported worsening symptoms after failing to take her medication. (Tr. at 1564, 1570). After her medications were restarted, her symptoms resolved, and her mood improved throughout a five-day inpatient hospitalization. (Tr. at 1570). She was observed laughing and joking with staff and peers. *Id*. She was discharged as stable and reported "doing better overall." *Id*.

Medical evidence supports the ALJ's mental RFC assessment. Ms. Dejesus's symptoms responded well to treatment, and symptoms that are adequately controlled by medication cannot be considered disabling. *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996). The ALJ acknowledged that Ms. Dejesus still experienced symptoms related to her mental impairments, but he accounted for them with corresponding RFC limitations. (Tr. at 26). Ms. Dejesus has failed to demonstrate that the ALJ erred in determining her RFC. Substantial evidence in the record supports the ALJ's assessment of Ms. Dejesus's mental impairments.

IV. **Conclusion**:

Substantial evidence supports the Commissioner's decision that Ms. Dejesus was not disabled. Judgment should be entered in favor of the Commissioner.

IT IS SO ORDERED this 24th day of August 2022.

                                               _____
                                               UNITED STATES MAGISTRATE JUDGE